IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| PEDRO QUILES, SR., as Personal Representative of the ESTATE OF PEDRO QUILES, JR. and on behalf of P.Q. and B.Q., Survivors,<br><br>　　Plaintiffs,<br><br>v.<br><br>CITY OF TAMPA, a municipal corporation, and JANE CASTOR, SCOTT SAVITT and WILLIAM CAIN, individually,<br><br>　　Defendants. | Case No. 8:12-CV-550-T35-AEP |

**AMENDED COMPLAINT FOR DAMAGES**

　　Plaintiffs, PEDRO QUILES, SR., as Personal Representative of the ESTATE OF PEDRO QUILES, JR. and on behalf of minor Survivors, P.Q. and B.Q., survivors, by and through their undersigned attorney, hereby sue the Defendants, CITY OF TAMPA, and SCOTT SAVITT, WILLIAM CAIN, and JANE CASTOR, individually, and alleges:

JURISDICTION AND IDENTIFICATION OF THE PARTIES

1. Jurisdiction of the Court is invoked pursuant to 28 U.S.C. §§ 1331 to redress the deprivation, under color of state law, of rights secured to the plaintiff's decedent by the Fourth Amendment to the U.S. Constitution.

2. The Plaintiff's claims for relief are predicated upon 42 U.S.C. § 1983, which authorizes actions to redress the deprivation, under color of state law, of rights, privileges and immunities secured to the plaintiff by the Constitution and laws of the United States and by 42 U.S.C. § 1988.

3. Venue is appropriate in this Court under 28 U.S.C. § 1391(b)(1) because all Defendants are situated within, and under 28 U.S.C. § 1391(b)(2) because all or a substantial part of the wrongful acts complained of occurred within, the Middle District of Florida.

4. At all times material hereto, Plaintiffs, PEDRO QUILES, SR., as the Personal Representative of the ESTATE OF PEDRO QUILES, JR. and on behalf of minor survivors, P.Q. and B.Q. and are residents of State of Florida. PEDRO QUILES SR. is lawfully authorized as the personal representative of the Estate of Pedro Quiles, Jr. and on behalf of survivors, P.Q. and B.Q.

5. The Defendant, City of Tampa (hereafter "City") is a municipal corporation located in Hillsborough County, Florida.

6. According to its Charter, Defendant, City operates a police force. This police force undertakes and, at all times material hereto did undertake operations and activities within the City of Tampa, Hillsborough County, Florida.

7. The City of Tampa Police Department (hereafter "Police Department") is an organization existing under the direction and control of the City of Tampa and is engaged in the provision of policing services for the benefit of the citizens of the City of Tampa, including the Plaintiff and deceased in this action.

8. Defendant, Jane Castor (hereinafter "Chief Castor") was at all times relevant hereto, the Chief of Police of the City of Tampa Police Department, a final policy maker for City of Tampa police officers and a supervisor for Officer Scott Savitt and William Cain. She is sued in her individual capacity.

9. At all times hereto, the City of Tampa vested its Chief of Police and her designees with the final policy making authority for the conduct of the operations of the police

department, including the training, supervision, and discipline of officers of the Police Department of the City of Tampa.

10. Defendant, Scott Savitt, (hereinafter "Savitt"), was at all times, acting within its course and scope of his employment of Defendant, City. He is sued individually.

11. Defendant, William Cain, (hereinafter "Cain"), was at all times, acting within its course and scope of his employment of Defendant, City. He is sued individually.

12. Each defendant is a "person" as that term is defined by the terms and provisions of 42 U.S.C. § 1983.

13. At all times material, the deceased, Pedro Quiles, Jr., was and is a citizen of the United States and a resident of the City of Tampa, and died on January 31, 2011 as a result of the actions of the Defendants in the City of Tampa, Florida.

14. All conditions precedent to the initiation and maintenance of this cause of action have been fully performed. Specifically, in accordance with the requirements of §768.28, Florida Statutes, Plaintiff has sent to the Defendant, City of Tampa, and the Insurance Commissioner, a Notice of Intent to initiate litigation (see attached Exhibit "A".

15. At all times relevant hereto, the Defendants were acting under color of law.

COMMON ALLEGATIONS OF FACT

16. On or about January 31, 2011, the City, through its employees including Officers Savitt and Cain, was patrolling the areas within the City of Tampa.

17. On January 31, 2011, at approximately 1:30 p.m., Officer William Cain of the City of Tampa Police Department followed a white Toyota traveling south on 15 Street in the City of Tampa.

18. Officer Cain got behind the vehicle and turned on his overhead emergency lights. There was no attempt by the driver of the vehicle to flee or avoid Officer Cain.

19. The incident was caught on in-car video recording although the officers failed to preserve the audio portion of the encounter.

**A. Officer Cain**

20. Upon information and belief, Officer Cain asked for the driver's license and vehicle registration. The driver of the vehicle, later determined to be Pedro Quiles, Jr. (hereinafter "deceased") provided a driver's license to Officer Cain in the name of "Alex Perez." Officer Cain went back to his vehicle, at which time Officer Savitt responded to that location as backup.

21. Upon information and belief, the Officers determined to arrest the driver for outstanding warrants. Officer Cain advised the deceased that he was going to be placed under arrest and opened the door to the vehicle.

22. At no time, did the deceased threaten, make any threatening movement or gestures, make any threatening statements, or display a weapon of any kind.

23. As the door to the vehicle was opened by Officer Cain, the deceased attempted to run.

24. He was grabbed immediately by Officers Cain and Savitt and continued to try and get out of the grasps of the officers and run.

25. Officer Cain held the deceased while Officer Savitt backed away with his hand on his firearm. Officer Cain and the deceased struggled until the deceased freed himself of Officer Cain's grip and again attempted to run away.

26. At no time during the struggle did the deceased make any threatening comments, threatening gestures, display a weapon or firearm, or touch Officer Cain's firearm.

27. The deceased was completely free of Officer Cain's grip in a standing position with his back towards Officer Savitt and began to run.

28. Again, the deceased made no threatening gestures or movements or comments towards Officer Savitt and did not possess a weapon or firearm.

29. Officer Savitt did not issue any commands, such as "stop, don't move" or attempt to use non-lethal force. Instead, Officer Savitt fired two shots striking the deceased in the side and in the back causing the deceased to immediately fall to the pavement, stating, "Why did you shoot me. I can't believe you shot me."

30. Officer Savitt wrongfully discharged his service weapon and shot Pedro Quiles, Jr. with two 40 caliber bullets in the side and back, causing his death

31. The use of a firearm constitutes the use of deadly force.

32. At the time Officer Savitt killed Pedro Quiles, Pedro Quiles did not represent an imminent threat to Officer Savitt, Officer Cain, or any other person.

33. At the time Officer Savitt killed Pedro Quiles, Pedro Quiles was running away from Officer Cain empty-handed, his torso bare, without any visible or apparent weapon.

34. At the time Officer Savitt killed Pedro Quiles, Jr., Officer Cain was still clearly in possession of his weapon.

35. In the video that recorded the incident, Officer Cain's weapon is seen in his holster on his right side, the side away from Pedro Quiles, Jr.

36. In the video that recorded the incident, Officer Cain never shows any concern or effort to check his holster as if he feared he had lost his firearm.

37. Officer Savitt, without provocation or justification, discharged his firearm, shooting Pedro Quiles, Jr. with two 40 caliber bullets in the side and back, causing his death.

38. Officer Cain claimed to have yelled "gun, gun, gun. He may have my gun, he has my gun." because he claimed to have believed his gun had been taken. No other witnesses heard the words and Plaintiff submits Officer Cain did not make that statement.

39. If Officer Cain did yell "gun, gun, gun," then he was attempting to mislead Officer Savitt to believe that he had lost his weapon to Mr. Quiles and in order to pursuade Officer Savitt to use deadly force on Mr. Quiles.

40. The use of deadly force was unnecessary, unwarranted, and excessive.

41. The officers failed to preserve the audio portion of the in-car video recording that depicts the shooting of Plaintiff's decedent.

42. The officers failed to preserve any fingerprints that may have been on Officer Cain's weapon.

B. **Officer Savitt**

43. At the time Officer Savitt killed Pedro Quiles, Pedro Quiles was trying to flee and did not represent an imminent threat to Officer Savitt, Officer Cain, or any other person.

44. At the time Officer Savitt killed Pedro Quiles, Pedro Quiles was running away from Officer Savitt empty-handed, his torso bare, without any visible or apparent weapon.

45. At the time Officer Savitt killed Pedro Quiles, Officer Savitt said he heard Officer Cain yell, "gun, gun, gun" and other words to that effect. None of the other nearby witnesses heard anyone yelling any such words and would have heard them had they been yelled since other statements of the officers at the same time were heard by the witnesses.

46. At the time Officer Savitt killed Pedro Quiles, Officer Cain was still clearly in possession of his weapon.

47. Officer Savitt, without provocation or justification, wrongfully discharged his service weapon and shot Pedro Quiles, Jr. with two 40 caliber bullets in the side and back, causing his death.

48. The use of deadly force by Defendant Savitt on Mr. Quiles was unnecessary, unwarranted, and excessive.

49. Officer Savitt escalated the use of deadly force unreasonably.

50. Officers failed to preserve the audio portion of the in-car video recording that depicts the shooting of Plaintiff's decedent.

51. Officers failed to preserve any fingerprints that may have been on Officer Cain's firearm.

**C. Chief Castor**

52. Chief Castor had an affirmative duty to adopt, implement, and maintain policies, customs and/or systems to govern arrests using non-lethal force as a starting point and only using lethal force when faced with actions or force that could seriously injury or result in death to its officers or others.

53. Although Chief Castor purported to promulgate policies that set standards, in some respects, for the use of deadly force, in practice those policies were not enforced.

54. The actual custom and practice promulgated by Chief Castor included acquiescence in the violation of City policy relating to the use of force, of escalation of force, and the use of deadly force contrary to written policy, in pursuit of high arrest statistics.

55. Chief Castor was aware of the violations of such force policies as the City had and failed to act to address those violations or acted so ineffectively that she signaled her officers that violation of use of force policies would be tolerated.

56. In the instant case, Chief Castor reviewed the investigation of the use of force that caused the death of Pedro Quiles and failed to take effective action to address the violation of written policies, confirming her policy of acquiescence and condonation.

57. Chief Castor promulgated or continued in force policies and practices that sacrificed concern for constitutional rights for productivity statistics, causing ambitious officers to be overly concerned with making arrests over other considerations.

58. Chief Castor promulgated or continued in force policies and practices that allowed internal affairs investigators and others to influence and coach witnesses prior to shooting witness interviews to favor a finding of justification.

59. Chief Castor promulgated or continued in force policies and practices that allowed internal affairs investigators and others to prompt and coach witnesses during shooting witness interviews to favor a finding of justification.

D. **City of Tampa**

60. The City of Tampa had an affirmative duty to adopt, implement, and maintain policies, customs, and/or systems to govern arrests using non-lethal force as a starting point and only using lethal force when faced with actions or force that could seriously injure or result in death to its officers or others.

61. The need to make and enforce such practices, in light of the duties assigned to police officers, is so obvious and the failure to do so is so likely to result in the violation of constitutional rights that the City was deliberately indifferent not to have done so.

62. Although the City purported to promulgate policies that set standards, in some respects, for the use of deadly force, in practice those policies were not enforced.

63. The actual custom and practice promulgated by the City included toleration and acquiescence in the violation of City policy relating to the use of force, of escalation of force, and the use of force contrary to written policy.

64. The City was aware of the frequent violation of City use of force policies and failed to act to address those violations or acted so ineffectively that it signaled its officers that violation of use of force policies would be tolerated.

65. In the instant case, the City reviewed the investigation of the use of force that caused the death of Pedro Quiles, Jr., and failed to take effective action to address the violation of written policies, confirming its policy of acquiescence and condonation.

66. Defendants, the City and Chief Castor each failed in their respective duties to adopt and maintain, implement or enforce proper policies, custom, and/or systems to govern the attempted arrests as alleged above.

67. The City and Chief Castor each knew or should have known their failure to adopt, implement, enforce, and/or maintain policies and customs to govern such arrests would violate the Constitutional rights of Pedro Quiles, Jr. or others in his situation.

68. At all times relevant hereto, Pedro Quiles, Jr. was lawfully on the streets of the City and was lawfully entitled to all rights and privileges afforded any citizen of the United States by all of the named defendants, including the City, its Chief of Police, its police force, and its officers present during the attempted arrest and shooting.

69. The City demonstrated a custom of toleration and condonation of unreasonable deadly force by failing to preserve evidence in that it failed to preserve audio of the shooting encounter and it failed to preserve fingerprints on the gun alleged to have been touched by Mr. Quiles.

70. Pedro Quiles, Jr. had a guaranteed right to be free from the use of excessive force.

71. Pursuant to the expressed terms of the Fourth and Fourteenth Amendments of the United States Constitution, that right cannot be taken or infringed by any governmental officer or agency without due process of law.

72. In the handling of the use of force on January 31, 2011, the defendants each acted in concert with deliberate indifference to the Constitutional rights guaranteed Pedro Quiles, Jr. by the Constitution of the United States.

73. Plaintiffs have been forced to retain counsel to represent them to vindicate their rights. Pursuant to the provisions of 42 U.S.C. § 1983, Plaintiffs are entitled to an award of reasonable attorney's fees and costs.

COUNT I - VIOLATION OF PEDRO QUILES JR.'S FOURTH AMENDMENT RIGHTS UNDER 42 U.S.C. § 1983 (as to Defendant Savitt and Cain)

74. Plaintiffs reassert the Common Allegations of Fact and further alleges as follows:

75. The actions of the Defendants, Savitt and Cain, acting jointly, constituted and resulted in a violation of the deceased, Pedro Quiles Jr.'s right to be free of excessive force as protected by the Fourth Amendment to the United States Constitution.

76. The officers, without provocation or justification, in direct violation of the rights afforded by the Fourth Amendment of the United States Constitution and the provisions of 42 U.S.C. § 1983, wrongfully discharged his service weapon and shot Pedro Quiles, Jr. with two 40 caliber bullets in the side and back, causing his death.

77. As a direct and proximate result, Pedro Quiles Jr. was shot twice, in the side and back and killed and Mr. Quiles and his Survivors suffered injuries as further alleged below.

WHEREFORE, Plaintiffs demand judgment and damages against the defendant resulting from the violations of his Constitutional rights.

COUNT II - VIOLATION OF PEDRO QUILES JR.'S FOURTH AMENDMENT RIGHTS
UNDER 42 U.S.C. § 1983 (as to Defendant, Chief Castor)

78. Plaintiffs reassert the Common Allegations of Fact and further alleges as follows:

79. The actions of the Defendant, Chief Castor as described above constituted and resulted in a violation of the deceased, Pedro Quiles Jr.'s right to be free of excessive force as protected by the Fourth Amendment to the United States Constitution.

80. Further, Defendant Chief Castor, by and through her agents was deliberately indifferent in custom and policy of inadequate supervision, inadequate hiring, inadequate in service, inadequate training, inadequate discipline, and retention.

81. Defendant Chief Castor also had supervisory liability for the violation of Pedro Quiles Jr.'s Fourth Amendment rights under the United States Constitution.

82. As a direct and proximate result, Pedro Quiles Jr. was shot twice, in the side and back and killed and Mr. Quiles and his Survivors suffered injuries as further alleged below.

WHEREFORE, Plaintiffs demand judgment and damages against the defendant resulting from the violations of his Constitutional rights.

COUNT III - VIOLATION OF PEDRO QUILES JR.'S FOURTH AMENDMENT RIGHTS
UNDER 42 U.S.C. § 1983 (as to Defendant City of Tampa)

83. Plaintiffs reassert the Common Allegations of Fact and further alleges as follows:

84. The actions of the Defendant, City as described above constituted and resulted in a violation of the deceased, Pedro Quiles Jr.'s right to be free of excessive force as protected by the Fourth Amendment to the United States Constitution.

85. Further, Defendant City, by and through her agents was deliberately indifferent in custom and policy of inadequate supervision, inadequate hiring, inadequate in service, inadequate training, inadequate discipline, and retention.

86. As a direct and proximate result, Pedro Quiles Jr. was shot twice, in the side and back and killed and Mr. Quiles and his Survivors suffered injuries as further alleged below.

WHEREFORE, Plaintiffs demand judgment and damages against the defendant resulting from the violations of his Constitutional rights.

### COUNT IV – WRONGFUL DEATH AGAINST THE CITY OF TAMPA

87. Plaintiffs reassert the Common Allegations of Fact and further alleges as follows:

88. In the alternative, Plaintiff is entitled to relief against the City of Tampa because the City of Tampa owed to Pedro Quiles, Jr., and breached, its duty to exercise reasonable care, pursuant to Section 768.16, et seq., when undertaking police operations so as not to endanger the lives and safety of persons within any foreseeable zones of risk created by such activities, including Pedro Quiles, Jr.

89. Defendant, City of Tampa breached its duty of care in the following ways:

    a. failing to implement and enforce proper policies to provide sufficient guidance for officers in the performance of their duties, including use of deadly force, so as not to endanger the lives and safety of persons within the foreseeable zone of risk created by their activities, including deceased;

    b. failing to properly implement training and supervision of officers to exercise reasonable tactics and procedures for undertaking operations and arrests so as to minimize the risk of injury or death to members of the public, including deceased;

    c. failing to use reasonable care in screening and hiring and retention of officers so as to ensure that officers are fit for the performance of their duties, including proper use of deadly force;

    d. being otherwise negligent in the conduct in the arrests of individuals who attempt to flee and are unarmed as described above.

90. As a direct and proximate result, Pedro Quiles Jr. was shot twice, in the side and back and killed and Mr. Quiles and his Survivors suffered injuries as further alleged below. WHEREFORE, Plaintiff demands judgment and damages against Defendant, City of Tampa, as allowed by law.

### Damages

A. The Estate of Pedro Quiles, Jr., has sustained the following damages:
   1. funeral and burial and other final expenses as a result of decedent's death that have become a charge against his Estate or that were paid on his behalf;
   2. loss of prospective net Estate accumulations;
   3. Pain and suffering and emotional distress of Pedro Quiles, Jr., under federal law;
   4. pre- and post-judgment interest; and
   5. loss of earnings of Pedro Quiles, Jr., from the date of his death, less lost support of his survivors excluding contributions in kind with interest.

B. The children of Pedro Quiles, P.Q. and B.Q., Minor Children, as survivors sustained the following damages:
   1. loss of support and services of their father;
   2. great mental pain, anguish, and suffering from the date of injury and continuing for the remainder of their lives;
   3. pre- and post-judgment interest.

### Prayer for Relief

WHEREFORE, the Plaintiff seeks judgment as follows:

A. Compensatory damages against each of the defendants herein;

B. Punitive damages against defendants sued individually;

C. Pre-judgment interest on any economic losses and post-judgment interest;

D. Attorney's fees pursuant to 42 U.S.C. §§ 1988 and costs of litigation;

E. A trial by jury on all issues so triable;

F. Such further relief as the Court deems just and proper.

Respectfully Submitted,

*s/Jon Herskowitz*
JON M. HERSKOWITZ, ESQ.
Florida Bar Number 814032
Baron & Herskowitz
9100 S. Dadeland Blvd.
Penthouse One, Suite 1704
Miami, Fl. 33156
Tel:(305) 670-0101 Fax: (305) 670-2393

ATTORNEY FOR PLAINTIFF

I CERTIFY the foregoing was filed electronically on 04/18/12, and that the person noted below is registered to be notified by the CM/ECF electronic mail system:

Ursula D. Richardson
Assistant City Attorney
315 E. Kennedy Boulevard, 5th Floor
Tampa, FL 33602

Ursula.Richardson@tampagov.net

*s/Jon Herskowitz*